```
            UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>United States of America</u>

    v.                                    Criminal No. 16-cr-157-LM
                                              Opinion No. 2020 DNH 094

<u>Leeland Eisenberg</u>

## **O R D E R**

Defendant is serving a 60-month sentence for bank robbery at the United States Penitentiary in Terre Haute, Indiana. He moves this court to grant him compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the threat posed to his health by the combination of his underlying medical conditions and the spread of COVID-19 in USP Terre Haute. The government concedes that defendant has exhausted his administrative remedies but objects to his release. The court held a telephonic hearing on defendant's motion on May 11, 2020, at which defendant testified.

**STANDARD OF REVIEW**

A court may grant so-called "compassionate release" to a defendant under 18 U.S.C. § 3582(c)(1)(A). The statute provides, in relevant part, that:

> [T]he court, upon motion of the Director of the Bureau of Prisons or upon motion of the defendant after the

> defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)  extraordinary and compelling reasons warrant such a reduction
>
> > . . .
>
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 (sentencing guidelines policy statement on compassionate release).

Where, as here, a motion for compassionate release is properly before the court, the court must determine if defendant is eligible for release.  A court may reduce a term of imprisonment under the compassionate release provision if it: (1) finds that extraordinary and compelling reasons warrant the reduction; (2) finds that the defendant is not likely to be a danger to the safety of any other person or the community; and (3) considers the sentencing factors outlined in 18 U.S.C. § 3553(a).  See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13; United States v. Britton, Crim. No. 18-cr-108-LM, 2020 WL

2404969, at *1-2 (D.N.H. May 12, 2020); see also United States v. Sapp, No. 14-CR-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020); United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). The defendant has the burden of showing that he is entitled to a sentence reduction. United States v. Ebbers, No. S402CR11443VEC, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). And the court has "broad discretion in deciding whether to grant or deny a motion for sentence reduction." United States v. Paul Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *2 (D. Conn. Mar. 19, 2020) (internal quotation marks omitted).

## BACKGROUND

Defendant pleaded guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a) in February 2017. This court sentenced defendant to 60 months of imprisonment, three years of supervised released, and restitution in the amount of $1,160.00. Defendant is currently serving that sentence at USP Terre Haute. In March 2020, defendant requested that this court grant him compassionate release due to his worsening medical condition. The court denied that request without prejudice because defendant had not exhausted his administrative remedies as required by the compassionate release statute. Doc. no. 34.

Defendant has now filed a supplemental motion for compassionate release based on the threat posed to his health by the combination of his underlying medical conditions and the spread of COVID-19 in USP Terre Haute.  Doc. no. 35.[1]  After the telephonic hearing in this case, the court issued an endorsed order explaining that while it considered some aspects of defendant's motion favorably, it was "concerned that there is no release plan."  Endorsed Order, May 11, 2020.  The court took defendant's supplemental motion for compassionate release under advisement, stating "The court will favorably entertain a placement proposal that adequately addresses and accounts for Mr. Eisenberg's health and safety, as well as the safety of the community."  Id.  On May 20, 2020, defendant, with the assistance of counsel, filed a proposed release plan (doc. no. 44) to which the government objects.[2]

---

[1] Defendant filed this motion pro se, as well as several other motions seeking the same or similar relief: a renewed motion for compassionate release (doc. no. 37); and two motions to reconsider the court's prior order denying without prejudice his former motion for compassionate release (doc. nos. 40 & 41). Because all four pending motions rely on essentially the same grounds and request the same relief, the court will refer to these motions collectively as defendant's supplemental motion for compassionate relief.  To be clear, the court has reviewed and relied on all defendant's filings in making this ruling.

[2] Defendant's proposed release plan requests that the court hold an expedited hearing.  Doc. no. 44.  Based on the pleadings and given that the court has already held a hearing on this matter, the court is not convinced that further oral argument would "provide assistance to the court."  LR 7.1(d).

4

**DISCUSSION**

The court has considered whether defendant has established an extraordinary and compelling reason warranting his release, whether he is likely to be a danger to the community if released, and whether the sentencing factors support his release.  Before the court received defendant's proposed release plan, the court indicated that it was "favorably inclined to grant" defendant's release.  Endorsed Order, May 11, 2020.  But the court's impression of defendant's request has changed.  After considering defendant's criminal history in light of the facts on the ground at the halfway house where he proposes to be released, the court is not confident that defendant can be trusted to comply with the rules in that less-restrictive environment.  The court begins its analysis with defendant's dangerousness because it drives the court's decision in this case.

I.  Dangerousness

Defendant represents a danger to the community.  Defendant's criminal history spans his entire adult life.  It includes both minor offenses (shoplifting, drug possession) and violent and disturbing crimes (rape, kidnapping, stalking, false reports of explosives).  See doc. no. 14 at 8-19 (presentence

5

investigation report).  For example, in 2007, defendant used the threat of detonating a bomb strapped to himself to hold hostage individuals present at Hillary Clinton's campaign office in Rochester, New Hampshire.  Id. at 15-16.  Defendant also used a threat of violence to perpetrate the bank robbery for which he is currently incarcerated.  Id. at 4.

Defendant also has a history of violating conditions of his release.  He has been found to have violated his parole on multiple occasions.  See doc. no. 14 at 10, 15.  Most relevant and most concerning, he pleaded guilty to escaping from a halfway house in 2013.  Id. at 17-18.  In light of defendant's dangerous criminal history and inability to abide by conditions of release, the court finds that if released defendant is likely to pose a danger to another person or the community.  See United States v. Mackenzie, No. CR 13-10149-FDS, 2020 WL 2104786, at *2 (D. Mass. May 1, 2020) (denying motion for compassionate release because defendant still posed a danger to the community in light of his criminal history and the nature of the offense); United States v. Van Dyke, No. 2:15-CR-0025-JLQ-1, 2020 WL 1811346, at *3 (E.D. Wash. Apr. 8, 2020), adhered to on reconsideration, 2020 WL 1845553 (E.D. Wash. Apr. 10, 2020) (denying motion for compassionate release in part due to defendant's history of repeated supervised release violations).  This finding weighs heavily against defendant's release.

II. Extraordinary and Compelling Reason

It cannot be disputed that defendant meets this eligibility requirement for compassionate release. He has multiple underlying health conditions—including heart failure, hypertension, chronic obstructive pulmonary disease (COPD), and emphysema—that put him at a substantially higher risk for severe illness or death from COVID-19. See CDC, Groups at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 28, 2020) (listing heart failure, hypertension, COPD and emphysema as medical conditions placing the individual at higher risk); see also United States v. Griggs, No. 4:18-CR-00216-DCC, 2020 WL 2614867, at *6 (D.S.C. May 22, 2020) (collecting cases granting compassionate release to older individuals with multiple preexisting health conditions). The government concedes that defendant's medical conditions put him in the high-risk category. And there is no dispute that some inmates at USP Terre Haute have tested positive for the virus. Nevertheless, and in light of defendant's dangerousness, the court is concerned about defendant's proposed release plan.

Defendant's proposed release plan is that the court place him on supervised release to live at Coolidge House, a halfway house, in Boston, Massachusetts, where he will be supervised by

7

a local probation officer.  The government objects to this proposed release plan because, as the government sees it, the plan would not provide better protection from contracting COVID-19 than his current placement at USP Terre Haute.

The court would consider defendant's placement at Coolidge House a suitable placement if defendant could be trusted to abide by the rules and regulations at Coolidge House.  However, defendant's history of committing dangerous crimes and violating conditions of release spells disaster for those currently residing in Coolidge House, the staff of Coolidge House, and the probation officer assigned to supervise defendant's release.  The court has no confidence that defendant would abide by rules regarding social distancing, the wearing of masks, and any other rules designed to keep him, the residents, and the staff safe.  Currently at Coolidge House the infection rate for COVID-19 is higher than at USP Terre Haute.  Coolidge House currently has seven positive cases out of roughly 60 residents, while USP Terre Haute currently has three positive cases out of approximately 1,319 inmates and one prior case resulting in death.[3]

---

[3] See BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited June 2, 2020); BOP, USP Terre Haute, https://www.bop.gov/locations/institutions/thp/ (last visited June 2, 2020).

8

Given that both placements represent a risk of infection, the court is not persuaded to release defendant to a less-restrictive environment. In a carceral setting, inmates, including defendant, can be forced to comply with certain precautionary measures in a way that residents at a halfway house cannot. For instance, the prison can impose a lock-down that restricts inmates to their cells for certain hours of the day; the same cannot be said of a halfway house.

Even with the deterrent effect of the risk of infection, the court is not confident that defendant will voluntarily abide by CDC guidelines and recommendations, which will not only put him at risk of infection, but the other residents at Coolidge House, probation officers, and the community at large. In light of all these considerations, the court is not persuaded that defendant's placement in the less-restrictive environment of Coolidge House makes any sense.

III. Sentencing Factors

Finally, the court must consider whether a reduction in defendant's sentence is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a) to the extent they are applicable. See 18 U.S.C. § 3582(c)(1)(A). Specifically, the court will consider whether the § 3553(a) sentencing factors support a reduction in defendant's sentence, or, alternatively,

9

whether they outweigh any "extraordinary and compelling reasons" supporting release and compel denial of the motion. See, e.g., United States v. Webster, No. 3:91CR138 (DJN), 2020 WL 618828, at *6 (E.D. Va. Feb. 10, 2020); Ebbers, 2020 WL 91399, at *7.

    Because defendant has medical issues that place him at high risk should he contract COVID-19, he appears to have established an extraordinary and compelling reason supporting his release. The court finds, however, that consideration of the sentencing factors outweighs that reason in this case. As explained in detail above, defendant poses a danger to the community if released—due to both his criminal history and his demonstrated inability to voluntarily comply with conditions of release in less-restrictive environments. While it is true that defendant is approaching his release date, the court finds it necessary that he remain incarcerated for his own safety and that of the community. See Mackenzie, 2020 WL 2104786, at *2-3 (even if court were to find extraordinary and compelling reason for release, court found that defendant's dangerousness and consideration of the § 3553(a) factors weighed heavily against release).

**CONCLUSION**

For the foregoing reasons, the court denies without prejudice defendant's supplemental motion for compassionate release (doc. nos. 35, 37, 40, 41).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 3, 2020

cc: Counsel of Record
     U.S. Probation
     U.S. Marshal